IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 15 CR 470-1 |
| | ) | |
| NICK GAKHAL, | ) | Judge Joan H. Lefkow |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

Nick Gakhal moves for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). (Dkt. 108.) For the reasons stated below, the motion is granted.

**BACKGROUND**

Gakhal pleaded guilty to participating in a conspiracy to distribute five kilograms or more of cocaine and one thousand kilograms or more of marijuana in violation of 21 U.S.C. § 846. (Dkt. 59 at 2.) He admitted in his plea agreement to using trucks and warehouses owned through his legitimate business, Allstates Transportation, to transport multi-kilogram quantities of marijuana and cocaine for a period of nearly ten years. (*Id.* at 2–3.) His conduct involved instructing unwitting employees to transport those drugs cross-country on multiple occasions, putting them at risk. (Dkt 102 at 10, 23.)

That conviction was Gakhal's first, however, and based on his cooperation the government agreed he qualified for so-called "safety valve" protection from what otherwise would have been a ten-year mandatory minimum sentence. (*Id.* at 4–5; dkt. 70 at 19); *see* 18 U.S.C. § 3553(f); U.S.S.G. § 5C1.2. On July 2, 2018, the court sentenced Gakhal to 66 months in

prison, significantly below his guidelines range of 135 to 168 months.[1] (Dkt. 102 at 4, 24.) The court also imposed a fine of $100,000, within the guidelines range of $17,500 to $10,000,000. (*Id.* at 15, 25.)

Gakhal is now an inmate at Federal Prison Camp Cumberland in Maryland. His anticipated release date is March 3, 2022. (Dkt. 108-15.) He seeks "compassionate" release because of his serious medical condition which, coupled with the current international COVID-19 pandemic, places him at great risk of serious complications or death should he contract the virus. Although the government concedes that Gakhal's medical condition poses serious risk to his safety, it opposes the motion.

The Bureau of Prisons' website states that the facility of which FPC Cumberland Prison Camp is a part, FCI Cumberland, has had six inmates and two staff members test positive for COVID-19 and all have recovered.[2] At the time of this order, FPC Cumberland Prison Camp has a population of 184 inmates and FCI Cumberland has a population of 941 inmates.[3]

"By now [certain] details of the global COVID-19 pandemic are well-known to the parties and the general public," including that it spreads rapidly through respiratory droplets, can be spread by asymptomatic individuals, and can cause severe illness and death. *Ruderman* v. *Kolitwenzew*, No. 20 C 2082, 2020 WL 2449758, at *1–2 (C.D. Ill. May 12, 2020). The Centers for Disease Control and Prevention confirms that as of June 29, 2020, COVID-19 has infected

---

[1] The government recommended a sentence within guidelines and the probation office recommended a sentence of 70 months. (Dkt. 87 at 1; dkt. 102 at 24.)

[2] Bureau of Prisons, *COVID-19 Coronavirus*, https://www.bop.gov/coronavirus/ (last accessed June 29, 2020). The government states in its memorandum that, as of June 16, there were no positive cases of COVID-19 at FCI Cumberland. (Dkt. 114 at 6.) Because it relies on the same source, the court accepts the website's information.

[3] Bureau of Prisons, *FCI Cumberland*, https://www.bop.gov/locations/institutions/cum/ (last accessed June 29, 2020).

2

more than 2.5 million Americans and killed more than 125,000 since the first case was reported in this country approximately five months ago.[4] Because there is no known vaccine or cure for COVID-19, the CDC recommends, among other things, "social distancing," or maintaining a distance of at least 6 feet from other people and avoiding crowded places and enclosed gatherings, to minimize the risk of transmission.[5] *Ruderman*, 2020 WL 2449758, at *2.

Social distancing is especially difficult in jails and prisons. The CDC summarizes these challenges as including "crowded dormitories, shared lavatories, limited medical and isolation resources, daily entry and exit of staff members and visitors, continual introduction of newly incarcerated or detained persons, and transport of incarcerated or detained persons in multiperson vehicles for court-related, medical, or security reasons."[6]

The CDC has published protocols to prevent introduction of the virus into correctional facilities[7] and, based on the government's submission, it appears the protocols are being followed at FCI Cumberland:

> [I]nmates who have COVID-19 symptoms are isolated in the Health Services Unit located within the FCI. These inmates are monitored by Health Services 24 hours a day to ensure they do not require medical intervention that cannot be provided in an ambulatory care setting. Inmates who test positive for the virus remain in isolation for a total of 28 days. Asymptomatic inmates who require quarantine are housed in separate units at FCI Cumberland depending on whether they are FCI inmates or camp inmates. In the general population, camp inmates do not interact

---

[4] CDC, *Coronavirus Disease 2019 Cases in the U.S.*, https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html (last accessed June 29, 2020).

[5] CDC, *Social Distancing*, https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/social-distancing.html (last accessed June 29, 2020).

[6] Wallace et al., *COVID-19 in Correctional Detention Facilities—United States, February–April 2020*, 69 Morbidity & Mortality Weekly Report 587, 587 (2020), *available at* https://www.cdc.gov/mmwr/volumes/69/wr/pdfs/mm6919e1-H.pdf (last accessed June 29, 2020).

[7] *Id.* (citing CDC, *Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional & Detention Facilities*, https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html (last accessed June 29, 2020)).

3

>with FCI inmates. [S]taff at FCI Cumberland are screened daily for temperature and COVID-19 symptoms before entering the institution. In addition, any inmate who comes out for a work detail is screened by Health Services before leaving their assigned unit. FCI Cumberland camp inmates are screened daily. Any inmate who has had contact with a COVID-19 positive individual is quarantined for 14 days and is screened twice daily by Health Services. Staff and inmates at FCI Cumberland are required to wear masks at all times. Inmates are not required to wear masks when in their assigned cells.

(Dkt. 116 ¶¶ 3–7.) Other than temperature and symptom screening as described above, the BOP does not test asymptomatic staff or inmates. (See dkt. 117-1, -2.) The Attorney General issued a memorandum to BOP indicating that to reduce risk, prisoners who "are non-violent and pose minimal likelihood of recidivism," may safely be released to home confinement as a way to "manage the prison population."[8]

On March 30, 2020, Gakhal submitted a letter to the warden of FPC Cumberland requesting compassionate release and home confinement pursuant to 18 U.S.C. § 3582. (Dkt. 108-3.) In the letter, Gakhal described his medical conditions and a plan for how he would live and support himself were he to be released. (*Id.*) On April 13, 2020, the warden acknowledged receipt of Gakhal's request but did not address its merits. (Dkt. 108-4.) On May 28, 2020, a BOP executive assistant emailed Gakhal's wife and stated that Gakhal would not be released. (Dkt. 108-5.)

Whether independently of this request or not, the BOP evaluated Gakhal for early release to a residential reentry center or home confinement based on 18 U.S.C. § 3621(e)(2)(B). This statute authorizes BOP to reduce the custodial term of a prisoner who has successfully completed a substance abuse treatment program, up to one year less than the term the prisoner must

---

[8] Attorney General's Memorandum, *Prioritization of Home Confinement as Appropriate in Response to COVID-19 Pandemic* 1 (Mar. 26, 2020), *available at* https://www.bop.gov/coronavirus/docs/bop_memo_home_confinement.pdf (last accessed June 29, 2020).

otherwise serve. Although the record of that review is not entirely before the court, the submitted documents indicate that Gakhal met BOP criteria but had more than one year left to serve so was denied early release.[9]

Gakhal filed this motion on June 11, 2020. (Dkt. 108.) He attaches a letter from Dr. Daniela Kovacs of Sinai Health System stating that she treated Gakhal for "his significant CAD [Coronary Artery Disease] history with prior stents, dyslipidemia, and HTN [hypertension]." (Dkt. 108-1.) Dr. Kovacs opines that Gakhal "could be at a high risk for severe complications associated with COVID-19 infection." (*Id.*)

## **LEGAL STANDARD**

Under 18 U.S.C. § 3582(c), "the court may not modify a term of imprisonment once it has been imposed" except in narrow circumstances. One of those circumstances, commonly called "compassionate release," provides, as relevant here,

> in any case … the court, … upon motion of the defendant after the defendant has fully exhausted all administrative [remedies], may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction … and such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

---

[9] Gakhal states that the BOP previously had given indications that it planned to place him on home confinement, including providing him with a "Summary Reentry Plan – Progress Report" that said he was "eligible for early release via 19 USC 3621(E)" and sending a Salvation Army re-entry coordinator to tour his wife's home. (Dkt. 108 at 2–3.) The government reports the decision to deny Gakhal's request was made by BOP Central Office because "he had not served enough of his sentence." (Dkt. 116 ¶ 2.) In contrast to § 3621(e), the Attorney General's Memorandum regarding "Prioritization of Home Confinement As Appropriate in Response to COVID-19 Pandemic," does not identify the portion of the sentence served as a factor in granting release. *See* Attorney General's Memorandum, *Prioritization of Home Confinement as Appropriate in Response to COVID-19 Pandemic* 1 (Mar. 26, 2020), *available at* https://www.bop.gov/coronavirus/docs/bop_memo_home_confinement.pdf (last accessed June 29, 2020).

5

18 U.S.C. § 3582(c)(1)(A)(i).[10] The relevant Sentencing Commission Guideline imposes the additional requirement that the defendant not be "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(a)(2). The government does not dispute that Gakhal's motion is properly before the court because his remedies at the BOP have been exhausted.

## ANALYSIS

### I. Extraordinary and Compelling Circumstances

The government concedes that because Gakhal suffers from comorbidities that significantly increase his risk of serious and fatal complications from COVID-19, he has established that he suffers from "a serious physical or medical condition … that substantially diminishes [his] ability to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." This is an "extraordinary and compelling circumstance" prescribed by U.S.S.G. § 1B1.13 cmt. n.1(A)(ii)(I), (Dkt. 114 at 15-16.) Because Gakhal has established his extraordinary and compelling circumstance, the question is only whether Gakhal meets the criteria of the Guidelines.

### II. Danger to Others or to the Community – Sentencing Factors

Gakhal must show he is not "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(a)(2). The government does not argue that Gakhal is likely to engage in drug trafficking or other serious crime in the future. Rather, it relies principally on the seriousness of the crime committed. The court is to consider these sentencing factors:

---

[10] Two other early-release mechanisms exist but do not authorize a court to reduce a sentence based on COVID-19 concerns, at least without independent action by the BOP. 18 U.S.C. §§ 3582(c)(1)(A)(ii) and 3582(c)(1)(B).

6

>(1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
>(2) the weight of the evidence against the person;
>
>(3) the history and characteristics of the person, including--
>
>>(A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>>
>>(B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
>(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. . . .

18 U.S.C. § 3142(g).

Under these factors, only the first two are significant. Gakhal admittedly trafficked very large amounts of drugs for many years and, although he was never directly involved in violence (setting aside the doubtlessly true notion that any involvement in the illicit drug trade fosters violence at some level), he placed others at risk without their knowledge.

These factors are mitigated by this being his first offense, his cooperation with the government during his prosecution, and the imposition of a substantial fine in addition to imprisonment. At the time the presentence report was prepared he had assets greater than $1 million, part of which is likely subject to forfeiture under money-laundering statutes. He has not committed any disciplinary infractions while incarcerated, and the BOP categorizes him as a "minimum risk." (Dkt. 108-10.) He has also successfully completed substance abuse treatment

7

and other available programs. He has a verifiable re-entry plan and could live where he would be at lower risk than in prison.

## CONCLUSION AND ORDER

Defendant meets the criteria that (1) he has an extraordinary and compelling circumstance under governing law and (2) he is not a danger to the community should he be released from custody. Therefore, the Bureau of Prisons is ordered to release Gakhal from its custody as soon as practicable according to medical protocols of the Bureau. Gakhal's custodial sentence is hereby reduced to time served, and he is placed on supervised release to commence immediately upon his release for the duration of his sentence, with the condition that the first six months of his sentence shall be served in home confinement.


Date: June 30, 2020                              _____
                                                 U.S. District Judge Joan H. Lefkow